HANSBORO STATE BANK, a Corporation, Respondent, v. IM-
PERIAL ELEVATOR COMPANY, a Corporation, Appellant.

(179 N. W. 669.)

**Chattel mortgages — general creditor without lien not entitled to attack
on failure to record mortgage.**

1. A defect in the record of a mortgage or a failure to record it cannot be
attacked by a mere general creditor who has not some right, or interest in,
or lien on, the property itself.

**Chattel mortgages — situs of property at time of mortgage is controlling
element as to record.**

2. Section 6758, Comp. Laws 1913, which makes a mortgage of personal
property "void as against creditors of the mortgagor and subsequent purchasers
and encumbrancers of the property in good faith for value unless the original
or an authenticated copy thereof is filed by depositing the same in the office
of the register of deeds of the county where the property mortgaged  .   .   .
is at such time situated," makes the situs of the mortgaged property existing
at the time of the execution of the mortgage the controlling element.

**Trover and conversion — sufficiency of evidence to show conversion.**

3. For reasons stated in the opinion it is *held* that there is substantial evi-
dence tending to show that defendant received and converted the grain in con-
troversy.

Opinion filed October 15, 1920.

From a judgment of the District Court of Rolette County, *Buttz,
J.,* defendant appeals.

Affirmed.

*H. A. Libby,* for appellant.

*Kehoe & Moseley,* for respondent.

One who buys personal property is a purchaser, and not a creditor.
Volckers v. Stuske, 42 N. Y. Supp. 84; Caplinger v. Vaden, 5 Humph.
629.

The plaintiff, being a mortgagee holding a mortgage on the grain,
may, therefore, maintain this action against the defendant, which, on
account of its being a trespasser as to the grain, had and has no right
to ask that the securities be marshaled.   Baron v. San Angelo Nat.
Bank (Tex.) 138 S. W. 142; Scaling v. First Nat. Bank (Tex.) 87
S. W. 715; First Nat. Bank v. Sproull (Ala.) 16 S. W. 879; Wylie

v. Ohio River & C. R. Co. (S. C.) 26 S. E. 676; Huellmantel v. Vinton (Mich.) 70 N. W. 412; Godman v. Olson, 38 N. D. 372.

Where one of two innocent persons must suffer a loss, he shall bear it who, by his indiscretions, occasioned it. McMahon v. Sloan (Pa.) 51 Am. Dec. 601; Levi v. Booth (Md.) 42 Am. Rep. 332; Gussner v. Hawks, 13 N. D. 453; Galvin v. Bacon (Me.) 25 Am. Dec. 258; Velzian v. Lewis (Or.) 16 Pac. 641; Acorn Ref. Co. v. Knowlson (Mich.) 154 N. W. 11.

CHRISTIANSON, Ch. J. This is an action in conversion. Plaintiff sues to recover the value of certain wheat and barley grown during the year 1917, on certain lands in Rolette county, covered by a chattel mortgage executed to the plaintiff by one Walter Gran on October 5, 1916. The complaint is in the usual form, and alleges that Gran during the year 1917 "raised, harvested, and threshed a crop of barley and wheat upon said premises, and was the owner of the undivided one half of such crop of barley and wheat;" and that the defendant received 435 bushels of barley and 256 bushels of said wheat, and converted the same to its own use to plaintiff's damage in the sum of $1,020.43. The answer admits the corporate character of the parties to this action, and puts in issue the other allegations of the complaint.

The evidence shows that one Walter Gran in the year 1917 farmed, as a tenant, some land in section 32, township 164, range 68, in Towner county, and in sections 3 and 4, township 163, range 69, and in sections 31 and 33, township 164, range 69, in Rolette county. On October 5, 1916, Gran was residing on the lands located in Towner county. On that day he executed and delivered to the plaintiff bank certain promissory notes and two chattel mortgages. One of the mortgages covered certain personal property, such as horses and farm machinery, and the crops for 1917 on the Towner county lands. The other mortgage covered certain horses and machinery and the 1917 crops on the Rollette county lands. The first mortgage was filed in the office of the register of deeds of Towner county on October 7, 1917, and the second mortgage was filed in the office of the register of deeds of Rolette county on October 7, 1916. The two mortgages secured different notes. It appears that later in the fall of 1916, Gran moved upon the lands located in Rolette county, and took his personal property

with him; but the property was moved back and forth across the county line, as he was required to, and did, go back and forth in carrying on his farming operations in the two counties.   Defendant offered to prove that the Towner county mortgage was not refiled, nor an authenticated copy thereof filed, in the office of the register of deeds of Rolette county.

It appears that in the fall of 1917 the plaintiff received from Gran the proceeds of the crops grown on the Towner county lands, and gave him credit therefor on the debts secured by such chattel mortgage.   It also appears that on October 12th and 13th, 1917, certain men working for Gran hauled and delivered to the defendant's elevator at Rolla certain wheat and barley, and that the defendant paid Gran therefor. Shortly thereafter Gran absconded.   The plaintiff thereupon seized all of the horses, cattle and machinery covered by the Towner county mortgage, and sold all of such property at chattel mortgage foreclosure sale in Towner county, and applied the proceeds of such sale upon the debt secured by such mortgage.   Later in April, 1919, the plaintiff made formal demand upon the defendant for the grain in controversy, and, upon such demand being refused, it instituted this action to recover damages for the conversion thereof.   The case was tried to a jury, but at the conclusion of the trial, both parties moved for directed verdicts. The court thereupon discharged the jury, and made findings and conclusions in favor of the plaintiff, and defendant has appealed from the judgment.

The various assignments of error are based upon two main propositions:

1. The failure to file an authenticated copy of the Towner county mortgage in Rolette county.

2. Insufficiency of the evidence to identify the wheat.

(1) Under our statute, "a mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith for value unless the original or an authenticated copy thereof is filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at such time situated."   Comp. Laws 1913, § 6758.   "The filing of a mortgage of personal property in conformity with the provisions of this article operates as notice thereof to all subsequent purchasers and encumbrancers of so much of said prop-

erty as is at the time mentioned in the preceding section situated in the county or counties wherein such mortgage or an authenticated copy thereof is filed." Comp. Laws 1913, § 6759.

Basing his argument upon these statutory provisions, appellant's counsel contends: (a) That upon Gran selling to it the mortgaged grain defendant immediately became one of Gran's creditor's; (b) that inasmuch as Gran removed the personal property covered by the Towner county mortgage to Rolette county, and an authenticated copy of such mortgage was not filed in Rolette county, such mortgage was void as against the defendant as Gran's creditor; (c) that the plaintiff bank should have foreclosed the Rolette county mortgage, and applied the proceeds of the sale of the horses and farm machinery upon the debt secured by such mortgage, instead of foreclosing the Towner county mortgage, and applying the proceeds of such personal property upon the debt secured by that mortgage; (d) that it was the duty of the plaintiff, under § 6716, Comp. Laws 1913, to resort to and sell under its Rolette county mortgage all the other personal property covered by that mortgage, and apply the proceeds thereof in payment of the debt secured thereby, before attempting to recover from the defendant for conversion of the grain covered by that mortgage.

Assuming, without deciding, that defendant was creditor of Gran, it by no means follows that it is in position to assail the validity of the chattel mortgage under which the horses and machinery were sold, or to invoke the equitable defense which it attempts to invoke in this case.

"It is important that there should be kept in mind a distinction between the right of a general creditor to insist that an unfiled chattel mortgage is void and the ability to enforce this right. While an unfiled chattel mortgage may be void as to a general creditor, he cannot avail himself of the statute until he has armed himself with attachment or execution and levied on the property, or has in some other way secured a lien thereon. Before he has seized the property covered by the chattel mortgage, or secured some lien thereon, he is in no position to raise the question that the mortgage is void as to him." Union Nat. Bank v. Oium, 3 N. D. 193, 200, 44 Am. St. Rep. 533, 54 N. W. 1034.

As has already been noted, the answer (aside from certain admissions) contained merely a denial of the averments of the complaint. The doctrine of marshaling of assets or securities is an equitable one.

And the evidence which defendant sought to introduce as a basis for the application of this doctrine was not in denial of the averments of the complaint, but rather in confession and avoidance thereof. The evidence was not admissible under the general denial, and the trial court properly excluded it. 21 Enc. Pl. & Pr. 1107; 38 Cyc. 2072, note 26; Comp. Laws 1913, § 7448.

We do not find it necessary, however, to base our decision merely on procedural grounds.

It is undisputed that the mortgage under which plaintiff claims in this action was duly filed in Rolette county, and that such mortgage was a valid and subsisting lien upon the grain which Gran raised in 1917 on the Rolette county land. This mortgage secured an indebtedness wholly different from that secured by the Towner county mortgage. It is also undisputed that at the time the mortgages were given the horses, cattle, and machinery covered thereby were all in Towner county. Section 6758, supra, requires a chattel mortgage to be deposited "in the office of the register of deeds of the county where the property mortgage . . . is at such time situated." It is unlawful for a mortgagor to remove from the county the property covered by the mortgage "without the written consent of the then holder of such lien." Comp. Laws 1913, § 10,248. There is no contention that such consent was obtained in this case.

"Where the situs of the mortgaged property is made a controlling element with reference to the place of filing or registration, the situs intended is that existing at the time when the instrument is executed, and not where it may thereafter be removed. In the absence of any specific statutory provisions regarding the removal of mortgaged property, the record of a chattel mortgage in the town or county where it is required to be originally filed for record is held to be constructive notice to all the world, and the mortgage is valid without refiling, even though the property may be removed to another town or county, or even to another state. But by statute it is ordinarily required that if the mortgaged property is removed to another county the mortgage must be refiled or recorded anew in the county to which it is removed, otherwise it is ineffectual as against creditors and innocent purchasers of the property in the latter county. . . . Statutes requiring a refiling after removal apply only to cases where the removal was made

with the consent of the mortgagee.    The mortgage need not be refiled where the property was removed without the mortgagee's consent."    11 C. J. pp. 529–531.

(2) There is no question as to the identification of the barley. But defendant says there was no substantial evidence tending to establish that it received the wheat.    We are unable to agree with this contention.    One Yilkila was sworn as a witness for the plaintiff.    He testified that he worked for Gran.    On the 12th day of October, 1917, he and four other men hauled and delivered five loads of barley to defendant's elevator at Rolla.    On the day following four loads of Durum wheat covered by plaintiff's mortgage were taken from the premises where Gran was living.  · The witness, Yilkila, accompanied them until they were about 3 miles south of St. John, where he parted from them and went in a different direction, to his home in the Tustle Mountains.    At the time he left them they were headed towards Rolla. Rolla was the place to which they ordinarily and naturally would go from the point where he left them.    The agent of the defendant testified that on that day he bought from Gran 256 bushels of Durum wheat, and paid him therefor.    There was also testimony to the effect that Gran had no other wheat except that covered by plaintiff's mortgage.    Defendant's agent stated that he knew by hearsay where Gran lived. St. John, and not Rolla, would be the usual place to market grain for a person living there.

We are of the opinion that there is substantial evidence in support of the trial court's findings that defendant received and converted such wheat.

Judgment affirmed.

BRONSON, BIRDZELL, and ROBINSON, JJ., concur.

GRACE, J.    I concur in the result.